IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT H. KOONS, JR. and SALLY KOONS, his wife, : | CIVIL ACTION |
| Plaintiffs, : | |
| v. : | |
| : | JURY TRIAL DEMANDED |
| PIEDMONT HAWTHORNE AVIATION, HAWTHORNE : A-B-E, INC., n/k/a HAWTHORNE AIRPORT SERVICES, INC., and PIEDMONT HAWTHORNE HOLDINGS, INC., : | No. 02CV2739 |
| Defendants. : | |

**PLAINTIFF'S MOTION TO PERMIT CREATION
OF TRIAL EXHIBITS FROM ACCIDENT WRECKAGE**

Plaintiffs Robert and Sally Koons, by and through counsel, move this Court for an Order permitting them to create trial exhibits by dismantling and/or disassembling parts of the accident aircraft wreckage, and in support thereof aver as follows:

1. This lawsuit arises out of an airplane accident which occurred on May 9, 2000 when the single engine Cessna 210 aircraft piloted by plaintiff, Robert Koons crashed in Fayetteville, North Carolina.

2. Plaintiffs timely disclosed their liability expert reports to the defendant on May 2, 2003 in accordance with this Court's Second Scheduling Order entered on March 6, 2003. See Second Scheduling Order attached as Exhibit "A" and transmittal letter of plaintiffs' counsel attached as Exhibit "B", respectively.

3. Plaintiffs' experts opined that defendant Piedmont Hawthorne was negligent in performing an annual inspection of the accident aircraft on March 22, 2000 by failing to discover and correct pre-existing wrinkles in the left wing fuel bladder tank of the aircraft, thereby allowing entrapped water in the fuel system to migrate to the engine causing a power

interruption that led to the crash. See plaintiffs' Rule 26 Disclosures of A.J. Fiedler and Jerry L. Wells, attached as Exhibits "C" and "D", respectively.

4. As a courtesy to defense counsel, and in order to accommodate the schedule of the defense expert, plaintiffs' counsel agreed to give the defendant additional time to have its expert examine the wreckage.

5. This additional time needed by the defendant resulted in the entry of this Court's Third Scheduling Order on July 9, 2003, a copy of which is attached as Exhibit "E".

6. The defendant's inspection and examination of the wreckage did not take place until August 19, 2003.

7. On September 5, 2003, defendant produced the liability expert report of Mr. Douglas E. Stimpson. A copy of counsel's transmittal letter and Mr. Stimpson's report is attached as Exhibit "F".

8. Mr. Stimpson opined, *inter alia*, that (a) the wrinkles observed at the time of his inspection were either not present or not visible through the fuel cap opening when the aircraft was inspected by defendant on March 22, 2000; (b) the wrinkles were consistent with wreckage handling and crash damage observed to the wings of the aircraft; and (c) the defendant's inspectors would not have observed the wrinkles in the tanks as they existed at the time of Mr. Stimpson's inspection.

9. Based upon the flaws of Mr. Stimpson's analysis and reports, plaintiffs deemed it necessary to file rebuttal reports addressing the opinions of Mr. Stimpson.

10. In order to have the wreckage more readily available for trial, plaintiffs had the wreckage moved from Atlanta, Georgia to a storage facility in Clayton, Delaware.

11. After its arrival in Delaware, another inspection of the aircraft was conducted on September 30, 2003 so as to allow plaintiffs' experts an opportunity to evaluate Mr. Stimpson's findings and offer rebuttal opinions. Defendant's counsel attended this inspection.

12. During the September 30, 2003 inspection, plaintiffs requested that defendant's counsel permit the disassembly of the fuel bladder and fuel bay, which required the disassembly of the root butt rib to remove the fuel bay and bladder, and which also allow the parties to see the interior of the fuel bladder and bay as well as to permit the removal of the fuel bladder from the fuel bay to allow observation of the entire outer surface of the fuel bladder and inner surface of the fuel bay. Defendant objected to plaintiffs' proposed disassembly.

13. On October 10, 2003, plaintiffs provided their rebuttal reports to defendant. (See Exhibit "G", "H" and "I").

14. In order to prepare demonstrative exhibits and evidence for trial, plaintiffs now request permission to disassemble the fuel bladder and fuel bay as follows:

   a. *Removal of the Fuel Bay and Bladder From the Wing*. Plaintiffs request the Court's permission to remove the fuel bladder and fuel bay from the wing by disassembling the root butt rib. The removal of the fuel bay and bladder from the wing will allow plaintiffs' experts to show physical evidence to the jury of the fuel bladder, while at the same time maintaining the condition of the wing and allowing for reassembly, if needed, of the fuel bay, fuel cell bladder, and wing. (See, Affidavit of Jerry L. Wells, attached as Exhibit "J").

   b. *Viewing the Interior of the Fuel Bladder*. Plaintiffs also request permission to cut the top of the fuel bladder, which will provide an unobstructed view of the inside-bottom of the fuel cell bladder where the wrinkle exists. This will permit plaintiffs' experts to further prove that Mr. Stimpson's opinions and conclusions are contradicted by the physical evidence and will

3

allow plaintiffs to have a trial exhibit to show that the wrinkle existed at the time of defendant's inspection of the aircraft and was not caused by the impact of the crash. Specifically, seeing the interior of the fuel cell bladder will allow the jury to observe residue patterns, the full length and permanent set of the visible wrinkle, any additional wrinkles, other abnormalities in the tank, visual signs of a puddling effect due to the wrinkle damning water and fuel contaminants, all of which are physical signs of the long-term existence of a wrinkle, and all of which will serve to negate Mr. Stimpson's opinions. (Affidavit of Wells, Exhibit "J").

    c.    *Viewing the Underside of the Fuel Bladder and Interior of the Fuel Bay*. Plaintiffs request permission to remove the fuel cell bladder from the metal fuel bay to present a visual observation by the jury of the underside of the fuel bladder and the interior of the fuel bay. This will also provide physical evidence to rebut Mr. Stimpson's opinions, observations, and conclusions and prove that his opinions are incorrect. Specifically, viewing the fuel bay and outside bottom of the bladder will permit plaintiffs' experts to show the jury signs and wear marks that evidence the existence of a wrinkle prior to the crash. For example, a wrinkle will leave marks in the bottom of the fuel bay over an extended period of time. (Affidavit of Wells, Exhibit "J").

    15.    Plaintiffs have the burden of proof at trial and they should not be deprived of the opportunity to prove their case in as effective a manner as possible.

    16.    There is no prejudice to the defendant since it has already inspected the wreckage and the wrinkle in the bladder has been photographed by all parties and their experts.

    17.    Not allowing plaintiffs the opportunity to create exhibits for trial would prejudice plaintiffs by depriving them of the method and means needed to both prove their case and to demonstrate to the jury that the opinions of defendant's expert are unfounded and unsupported.

WHEREFORE, for the foregoing reasons, plaintiffs Robert and Sally Koons respectfully request that the Court grant permission for plaintiffs to create exhibits for trial by disassembling and/or dismantling the accident aircraft's left fuel cell bladder and fuel bay, as deemed necessary.

          Respectfully submitted,

          WOLK & GENTER

BY: _____
      Richard E. Genter, Esquire
      Attorney I.D.: 30419
      Christopher J. Cerski, Esquire
      Attorney I.D.: 89611
      1710-12 Locust Street
      Philadelphia, PA  19103
      (215) 545-4220
      Attorneys for Plaintiffs