IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT H. KOONS, JR. and SALLY KOONS, his wife, : | CIVIL ACTION |
| Plaintiffs, : | |
| v. : | |
| : | JURY TRIAL DEMANDED |
| PIEDMONT HAWTHORNE AVIATION, HAWTHORNE : | |
| A-B-E, INC., n/k/a HAWTHORNE AIRPORT : | |
| SERVICES, INC., and PIEDMONT HAWTHORNE : | No. 02CV2739 |
| HOLDINGS, INC., : | |
| Defendants. : | |

**MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFFS' MOTION TO PERMIT CREATION OF TRIAL
EXHIBITS FROM ACCIDENT WRECKAGE**

**I.    BACKGROUND**

This lawsuit arises out of an airplane accident which occurred on May 9, 2000 when the single engine Cessna 210 aircraft piloted by plaintiff, Robert Koons crashed in Fayetteville, North Carolina. On May 2, 2003, Plaintiffs timely disclosed their liability expert reports to the defendant in accordance with this Court's Second Scheduling Order entered on March 6, 2003. (See Exhibit "A" and Exhibit "B" attached to Plaintiffs' Motion).

As a courtesy to defense counsel, and in order to accommodate the schedule of the defense expert, plaintiffs' counsel agreed to give the defendant additional time to have its expert examine the wreckage. This additional time needed by the defendant resulted in the entry of this Court's Third Scheduling Order on July 9, 2003. The defendant's inspection and examination of the wreckage did not take place until August 19, 2003. On September 5, 2003, defendant produced the liability expert report of Mr. Douglas E. Stimpson. (See Exhibit "F" attached to Plaintiffs' Motion.).

Based upon the flaws of Mr. Stimpson's analysis and reports, plaintiffs deemed it necessary to file rebuttal reports addressing the opinions of Mr. Stimpson. On October 10, 2003, plaintiffs provided their rebuttal reports to defendant. (See Exhibit "G", "H" and "I" attached to Plaintiffs' Motion).

At the final wreckage inspection held on September 30, 2003, plaintiffs requested defendant's consent to disassemble the wreckage in the manner described in this memorandum. Defendant, however, objected to disassembly of the wreckage. Plaintiffs again attempted to resolve this dispute without the Court's intervention, but the parties could not agree. (See, Attorney Certification).

For the following reasons, plaintiffs request the Court to permit plaintiffs to create trial exhibits from the accident wreckage.

## II.    ARGUMENT

The Court possesses the inherent power to permit plaintiffs to create trial exhibits from the accident wreckage. Specifically, a United States District Court may use its inherent powers as necessary to achieve justice. In re M.P.W. Stone, 986 F.2d 898, 902 (5th. Cir. 1993); Bothwell v. Republic Tabacco, Co, 912 F.Supp. 1221, 1226 (D. Neb. 1995). For example, "where it appears that a court cannot adequately and efficiently carry out its duties without employing some special device, the court has the inherent power to do so. Id. The concept of inherent powers "encompasses the adjudicative process itself so that a court possesses the . . . power to do those things necessary to ensure a fair and just process, as well as just final outcome." Bothwell, 912 F.Supp. at 1227.

In the instant case, providing plaintiffs the ability to create trial exhibits from the accident wreckage will ensure a fair and just process. As the court is well aware, the plaintiffs have the burden of proof at trial. Plaintiffs experts opine that defendant Piedmont Hawthorne was negligent in performing an annual inspection of the accident aircraft on March 22, 2003 by failing to discover and correct pre-existing wrinkles in the left wing fuel bladder tank of the aircraft, thereby allowing entrapped water in the fuel system to migrate to the engine causing a power interruption that led to the crash. Defendant's expert, Mr. Stimpson, opines, *inter alia,* that (1) the wrinkles observed at the time of his inspection were either not present or not visible through the fuel cap opening when the aircraft was inspected by defendant on March 22, 2000; (b) the wrinkles were consistent with wreckage handling and crash damage observed to the wings of the aircraft; and (c) the defendant's inspectors would not have observed the wrinkles in the tanks as they existed at the time of Mr. Stimpson's inspection. Plaintiffs filed supplemental expert reports highlighting the flaws of Mr. Stimpson's analysis and opinions.

Plaintiffs believe that demonstrative exhibits and physical evidence that can be obtained from the accident wreckage will assist plaintiffs in proving their claims and will be helpful for the jury to understand the expert testimony of both parties. For example, plaintiffs propose removing the fuel bladder and fuel bay from the wing, which requires disassembly of the root butt rib. By removing the fuel bladder and fuel bay from the wing, plaintiffs will be able to show physical evidence to the jury regarding the condition of the fuel bladder at the time of inspection by Defendant Piedmont Hawthorne. Plaintiffs also propose to view the interior of the fuel bladder by cutting the top of the fuel bladder, which will provide an unobstructed view of the inside of the fuel cell where the wrinkle exists. This will permit plaintiffs' experts to further prove that Mr. Stimpson's opinions and conclusions are contradicted by the physical evidence

and will allow plaintiffs to have a trial exhibit to show that the wrinkle existed at the time of the defendant's inspection of the aircraft and was not caused by the impact of the crash. (See Exhibit "J" attached to Plaintiffs' Motion). Specifically, seeing the interior of the fuel cell bladder will allow the jury to observe residue patterns, the full length and permanent set of the visible wrinkle, any additional wrinkles, other abnormalities in the tank, visual signs of puddling effect due to the wrinkle damning water and fuel contaminants, all of which are physical signs of the long-term existence of a wrinkle. (See Exhibit "J" attached to Plaintiffs' Motion). Moreover, plaintiffs request permission to remove the fuel cell bladder from the metal fuel bay to present a visual observation by the jury of the underside of the fuel bladder and the interior of the fuel bay. This will permit plaintiffs experts to show the jury signs of wear marks that evidence the existence of a wrinkle prior to the crash. For example, a wrinkle will leave marks in the bottom of the fuel bay over an extended period of time. (See Exhibit "J" attached to Plaintiffs' Motion).

There is no prejudice to defendant in creating these trial exhibits because defendant has already inspected the wreckage and the wrinkles in the bladder, as well as took photographs. Not allowing plaintiffs the opportunity to create exhibits for trial would prejudice plaintiffs by depriving them of the method and means needed to both prove their case and to demonstrate to the jury that the opinions of defendant's expert are unfounded and unsupported. Because the creation of the exhibits will achieve justice and ensure a fair and final outcome to this litigation, plaintiffs request the court to permit plaintiffs to create exhibits from the wreckage.

Plaintiffs anticipate that Defendant Piedmont Hawthorne will argue that the creation of these exhibits will be destroying the current condition of the wreckage and, therefore, plaintiffs request should be denied. The Federal Rules of Civil Procedure, however, provide the Court

4

with the sound discretion of determining whether partial destruction of the wreckage's current condition should occur. *See, e.g., Ostrander v. Cone Mills, Inc., et. al.,* 119 F.R.D. 417 (D. Minn. 1988) (permitting destructive testing under rule Fed. R. Civ. P. 34); *Cameron v. District Court in and for the First Judicial District of the State of Colorado*, 193 Colo. 286, 565 P.2d 925 (1977) (permitting destructive testing under Colo. R. Civ. P. 26 & 34, which are rules of civil procedure patterned off of the Federal Rules of Civil Procedure). In determining whether to permit destruction of the current condition of the wreckage, the court is required to balance the interests to be served by the destruction against the values of preservation of the evidence on behalf of the opposing party. *Id.*

As explained above, plaintiffs request permission to create exhibits from the wreckage to both prove their case and demonstrate to the jury that the opinions of defendant's expert are unfounded and unsupported. The balancing test, between the value of the exhibits and defendants interest in preserving the current state of the evidence, weighs in favor of granting plaintiffs request. Here, no alternative or less evasive manner exists to observe and demonstrate to the jury the physical evidence contained within the fuel cell bladder and fuel bay. The proposed method of inspecting the fuel bladder and fuel bay will provide little to no prejudice to defendant because the visibility of the wrinkle through the fuel cap has been documented by pictures. In addition, the method of disassembly and inspection should allow for the fuel bladder (with wrinkle intact) and the fuel bay to be reassembled and inserted back into the wing, which should still permit viewing of the wrinkle through the fuel cap at trial.

Therefore, because of the potential physical evidence and its aide in assisting the jury, plaintiffs should be permitted to create trial exhibits from the accident wreckage.

**III.    CONCLUSION**

The Court possesses the inherent power to permit plaintiffs to create trial exhibits from the accident wreckage. Creating exhibits from the wreckage will assist plaintiffs in proving their claims and will be helpful for the jury to understand the expert testimony of both parties. No prejudice exists to defendant, in granting plaintiffs motion, because defendant has already inspected the wreckage and the wrinkles in the bladder, as well as took photographs. Therefore, because creating the exhibits from the wreckage will advance justice and ensure a just and final outcome, plaintiffs request the Court to grant their motion to create trial exhibits from the accident wreckage.

Respectfully submitted,

WOLK & GENTER

BY: _____
Richard E. Genter, Esquire
Attorney I.D.: 30419
Christopher J. Cerski, Esquire
Attorney I.D.: 89611
1710-12 Locust Street
Philadelphia, PA  19103
(215) 545-4220
Attorneys for Plaintiffs