IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT H. KOONS, JR. and<br>SALLY KOONS<br><br>    Plaintiffs,<br><br>    v.<br><br>PIEDMONT HAWTHORNE AVIATION,<br>HAWTHORNE A-B-E, INC.<br>n/k/a HAWTHORNE AIRPORT<br>SERVICES, INC., and PIEDMONT<br>HAWTHORNE HOLDINGS, INC.<br><br>    Defendants. | :<br>:<br>:<br>:<br>:<br>:  CIVIL ACTION<br>:  02-CV-2739<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION TO PERMIT
CREATION OF TRIAL EXHIBITS FROM ACCIDENT WRECKAGE**

    Defendants, Piedmont Hawthorne Aviation, Hawthorne A-B-E, Inc., n/k/a Hawthorne Airport Services, Inc., and Piedmont Hawthorne Holdings, Inc. ("Piedmont Hawthorne"), by and through their undersigned attorneys, Cozen O'Connor, hereby respond to Plaintiffs' Motion to Permit Creation of Trial Exhibits from Accident Wreckage as follows:

    1.  Admitted.

    2.  Admitted in part, denied in part. It is admitted only that Plaintiffs timely disclosed the liability expert reports of Jerry Wells and A. J. Fiedler in accordance with this Court's Second Scheduling Order. It is denied that the expert liability report of Dennis Handley was timely.

    3.  Denied. The averments of Paragraph 3 of Plaintiffs' Motion refer to documents in writing which speak for themselves and therefore, any attempts to interpret or construe said documents are denied. By way of further response, it is specifically denied that Piedmont Hawthorne was negligent.

4. Denied as stated. It is admitted only that the parties agreed to an extension of time to permit Defendants' expert to examine the wreckage.

5. Denied as stated. It is admitted only that the parties agreed to an extension of certain deadlines, which resulted in the entry of this Court's Third Scheduling Order.

6. Denied as stated. On June 2, 2003, Defendants made a request to inspect the aircraft. Defendants' counsel provided Plaintiffs' counsel with several dates in late July and early August for the inspection, however, none of these dates were acceptable to Plaintiffs. The inspection ultimately took place on August 19, 2003.

7. Admitted.

8. Denied. The averments of Paragraph 8 of Plaintiffs' Motion refer to documents in writing which speak for themselves and therefore, any attempts to interpret or construe said documents are denied.

9. Denied. It is specifically denied that Mr. Stimpson's analysis and report contain "flaws".

10. Denied as stated. It is admitted only that the wreckage was moved from Atlanta, Georgia to Clayton, Delaware.

11. Denied as stated. It is admitted only that an inspection was conducted on September 30, 2003 in Clayton, Delaware and that Defendants' counsel, Plaintiffs' counsel, and Plaintiffs' liability experts attended the inspection.

12. Admitted.

13. Admitted in part, denied in part. It is admitted that Plaintiffs produced the rebuttal reports of Jerry Wells and A. J. Fiedler. It is denied that the report of Dennis Handley is a "rebuttal" report.

14. The averments of Paragraph 14 do not require a response. Defendants object to the destruction of the aircraft wreckage.

15. Admitted in part, denied in part. It is admitted only that Plaintiffs have the burden of proof on their claims at trial. It is denied that Plaintiffs will be deprived of the opportunity to prove their case if this Court denies their motion to destroy the accident wreckage.

16. Denied. It is specifically denied that Defendants will not be prejudiced by the destruction of the evidence. To the contrary, as set forth in the attached Memorandum of Law, Defendants will be irreparably prejudiced.

17. Denied. It is specifically denied that Plaintiffs will be prejudiced by not being allowed to alter the accident wreckage. Plaintiffs have already issued expert reports opining that the wrinkle existed at the time of inspection and that Piedmont Hawthorne inspectors could have seen the wrinkle through the fuel cap.

WHEREFORE, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion to Permit Creation of Trial Exhibits from Accident Wreckage.

COZEN O'CONNOR


BY: _____
    Ann Thornton Field, Esquire
    Identification No. 52130
    Sara Anderson Frey, Esquire
    Identification No. 82835
    1900 Market Street
    Philadelphia, PA 19103
    (215) 665-2000
    Attorneys for Defendants

Date: November 4, 2003

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT H. KOONS, JR. and<br>SALLY KOONS | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | 02-CV-2739 |
| | : | |
| PIEDMONT HAWTHORNE AVIATION,<br>HAWTHORNE A-B-E, INC.<br>n/k/a HAWTHORNE AIRPORT<br>SERVICES, INC., and PIEDMONT<br>HAWTHORNE HOLDINGS, INC. | :<br>:<br>:<br>:<br>: | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
RESPONSE TO PLAINTIFFS' MOTION TO PERMIT CREATION OF
TRIAL EXHIBITS FROM ACCIDENT WRECKAGE**

**I.    BACKGROUND**

On May 9, 2000, Robert Koons crashed his single engine Cessna 210 aircraft in Fayetteville, North Carolina. Approximately seven weeks prior to the crash, Defendants performed an annual inspection on the Cessna 210. The crux of this lawsuit and a highly contentious issue between the parties' experts is Plaintiffs' allegation that Defendants negligently failed to detect and correct a wrinkle in the Cessna's left fuel bladder during the annual inspection. Plaintiffs allege that water became trapped in this wrinkle, migrated into the engine, and caused the engine to stall prior to the crash. Both parties have retained experts to testify at trial regarding their conclusions as to the cause of the crash and, more specifically, the presence of the wrinkle in the fuel bladder at the time of Defendants' inspection of the aircraft and the visibility of the wrinkle through the fuel cap opening.

The ability to observe the wrinkle through the fuel cap opening is a vigorously disputed issue and one that will play a major role in the resolution of this litigation. Both of Plaintiffs' experts conclude that a wrinkle was observable through the tank filler cap opening at the time of the annual inspection and, therefore, Defendants were negligent in not detecting and correcting the wrinkle. Defendants' expert, Mr. Stimpson, concludes that the wrinkle was not visible through the opening and that Piedmont's inspection was not negligent. In support of this conclusion, Defendants plan to display the tank filler cap opening and the fuel bladder to the jury. This will aid the jury in reaching its own conclusion on the issue and the experts' opinions.

Plaintiffs have filed the instant motion seeking permission to (1) remove the fuel bladder and fuel bay from the wing by disassembling the root butt rib, (2) *cut* the top of the fuel bladder, and (3) remove the fuel cell bladder from the metal fuel bay. For the following reasons, Plaintiffs' motion should be denied.

II. **LEGAL ARGUMENT**

    A. **Plaintiffs' Motion is Improper and Untimely**

Plaintiffs produced their liability expert reports on May 2, 2003. In those reports, Plaintiffs' experts opined that (1) the wrinkle existed at the time of the annual inspection in March 22, 2000, (2) that Defendants were negligent in failing to detect the wrinkle at the March 22, 2000 inspection, and (3) the presence of the wrinkle caused the accident.

Now, five months after Plaintiffs issued their expert reports, Plaintiffs seek to destroy the aircraft wreckage in order to find support for the opinions expressed by their experts. This Court should not permit parties to issue expert reports setting forth opinions and thereafter, permit parties to conduct discovery in order to establish support for their experts' opinions.

The case law cited by Plaintiffs is inapplicable to the instant case. In those cases, the courts addressed the propriety of allowing one party to perform destructive testing on evidence

**during discovery and <u>before</u> an expert opinion or theory had been developed.** For example, in <u>Cameron</u>, the plaintiff sought to perform destructive tests on a tire in order to have his expert render an opinion as to whether the tire was defective. Likewise, in <u>Ostrander</u>, the plaintiff sought to conduct destructive testing on fabric to determine whether the fabric was flame retardant. In both <u>Cameron</u> and <u>Ostrander</u> the plaintiffs were seeking permission to perform destructive testing <u>before</u> their experts had developed an opinion or theory in the matter.

That is not the case here. Plaintiffs submitted liability expert reports on May 2, 2003. In those reports, Plaintiffs' experts opined that the cause of the crash was the presence of the wrinkle in the fuel bladder and that Defendants were negligent in failing to detect the wrinkle at the March 22, 2000 inspection. Therefore, this is not a situation where the Plaintiffs are seeking to alter/destroy evidence in order for their expert to develop an opinion.

Plaintiffs' motion therefore, is untimely. The appropriate procedure would have been for Plaintiffs to file this motion during discovery, <u>before</u> their experts had issued their opinion. Instead, Plaintiffs have apparently issued expert reports setting forth opinions that are not supported by the evidence and now, a few weeks before trial, request permission to develop support for those opinions. This Court should not condone this practice.

In <u>Hawthorne v. Michelin Tire Corp.</u>, 100 F.3d 962, 1996 WL 640481 (9th Cir. Nov. 5, 1996), the court found this was improper. In that case, the plaintiff requested permission to cut into part of a tire to expose the inner layers of the tire where a bulge was located. The plaintiff's expert had already issued an opinion as to the cause of the accident, two years prior to the request for destructive testing. The trial court denied the plaintiff's request and on appeal, the Ninth Circuit affirmed.

In ruling, the court noted that such destructive testing was not necessary since the plaintiff had already produced an expert who offered an opinion as to the cause of the tire

3

blowout. Id. at *4. Since the plaintiff had already stated their theory for the case, the court stated that destructive testing would "only be used to strengthen that theory." Id. Given that the tire was a "critical piece of evidence", the court denied the request to cut the tire.

Here, the accident wreckage, particularly the left wing and fuel bladder, is the critical piece of evidence. This case boils down to whether the wrinkle was present at the time of the inspection and whether or not Piedmont Hawthorne inspectors could see the wrinkle through the fuel cap at the time of inspection.[1] Plaintiffs' experts have already offered their opinions and theories as to the cause of the crash. Plaintiffs should not be permitted to produce expert reports and then a few weeks before trial seek permission to create evidence to support those opinions. Therefore, permitting Plaintiffs to alter/destroy the wreckage is unnecessary and would only serve to strengthen Plaintiffs' experts' theories.

Furthermore, it is unnecessary to destroy the critical piece of evidence in this case. There is nothing preventing Plaintiffs from creating an exemplar wing and fuel tank. Moreover, it is possible for Plaintiffs to remove the fuel bladder from the right wing of the aircraft. Given the importance of the maintaining the integrity of the fuel cap and bladder, however, Plaintiffs' request to alter/destroy the left wing/fuel tank must be denied.

B. **Destruction of the Accident Wreckage is not Necessary to Rebut the Report of Defendants' Expert.**

Plaintiffs try to argue in their motion that destruction of the evidence is necessary to rebut the report of Defendants' expert.

As stated above, Plaintiffs' experts opined, in their May 2003 reports, that (1) the wrinkle was present at the March 22, 2000 inspection, (2) Piedmont Hawthorne mechanics were

---

[1] Plaintiffs do not claim that Defendants should have taken the wing and fuel bay apart, as Plaintiffs propose to do. Rather, Plaintiffs claim Defendants should have seen the wrinkle through the fuel cap while the wing/fuel tank was intact.

4

negligent in failing to detect the wrinkle, and (3) the presence of the wrinkle caused the crash. Defense expert Douglas Stimpson concludes in his report that (1) the wrinkle was not present at the March 22, 2000 annual inspection, (2) Piedmont Hawthorne mechanics could not have seen the wrinkle, even if it were present, and (3) the presence of the wrinkle, even if it were present, did not cause the crash.

Rebuttal reports or testimony are limited "to that which is precisely directed to rebutting new matter or new theories presented by the defendant's case-in-chief." Upshur v. Shepherd, 538 F. Supp. 1176, 1180 (E.D. Pa. 1982); Bowman v. General Motors Corporation, 427 F.Supp. 234, 236 & 239 (E.D. Pa. 1977) (rebuttal expert cannot go beyond the testimony presented in plaintiff's case-in-chief, and should be limited to rebutting specific points raised by the defendant's expert). It is "well-settled that evidence which properly belongs in the case-in-chief but is first introduced in rebuttal may be rejected, so as to avoid prejudice to the defendant and to ensure the orderly presentation of proof." Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19, 22 (3d Cir. 1984).

Rebuttal testimony is "not an opportunity for the correction of any oversights" made by plaintiff in their case-in-chief. Step-Saver Data Systems, Inc. v. Wyse Technology, 752 F.Supp. 181, 193 (E.D. Pa. 1990), *rev'd on other grounds* 203 F.3d 1202 (3d Cir. 2000). Indeed, "[m]atters and theories first introduced in the defendant's case but known to the plaintiff before trial should be anticipated in the plaintiff's case-in chief." Harrell v. Fibreboard Corp., 1989 WL 145810 (E.D. Pa. Nov. 27, 1989).

Plaintiffs have been aware since the beginning of this lawsuit that Defendants maintain that the wrinkle was not present on the date of the annual inspection. Therefore, Plaintiffs' counsel's claim that he was "surprised" that Mr. Stimpson opined the wrinkle was not present when Piedmont Hawthorne conducted the annual inspection is baseless. Plaintiffs could have

5

reasonably anticipated at the time Plaintiffs' expert Fiedler examined the wreckage in January and April 2002 that Defendants would argue the wrinkle was not present during the annual inspection. In fact, it appears that this conclusion was anticipated, as Mr. Fiedler concludes in his May 2003 report that the wrinkle was present at the annual inspection. There is simply nothing new in Mr. Stimpson's report which necessitates rebuttal.

Even if Plaintiffs were properly introducing rebuttal opinions, destroying <u>the</u> critical piece of evidence in this case is unnecessary to rebut Mr. Stimpson's opinions. With respect to Mr. Stimpson's opinion that the wrinkle cannot be seen through the fuel cap, Plaintiffs' experts have already re-examined the wreckage and issued a rebuttal opinion stating that the wrinkle can be seen. Therefore, it is not necessary to destroy the wreckage to rebut this opinion.

With respect to Mr. Stimpson's opinion that the wrinkle is consistent with the wreckage handling and crash damage, Plaintiffs can demonstrate to the jury that the exterior of the wing, which surrounds the fuel tank is intact and attempt to discredit Mr. Stimpson's opinions. It is unnecessary to destroy this critical piece of evidence.[2]

Consequently, Plaintiffs' motion should be denied.

### C. **Alteration/Destruction of the Evidence Will Irreparably Prejudice Defendants.**

If Plaintiffs' motion is granted, Defendants will be irreparably prejudiced. As stated above, the critical issue in this matter is whether Piedmont Hawthorne inspectors could have seen the wrinkle through the fuel cap at the time of inspection. If the Plaintiff is allowed to alter

---

[2] During a conference call with the Court, Plaintiffs' counsel indicated it was necessary to remove the bladder to show a snap was missing. This was the first time Defendants heard of a theory involving missing snaps. This issue is not addressed in any of Plaintiffs' expert reports and is not addressed in Mr. Stimpson's report. Moreover, Plaintiffs' expert Mr. Fiedler examined the wreckage twice before issuing his initial report and therefore, if there is an issue relating to a missing snap (which Defendants deny), the issue should have been raised in his reports and not a few weeks before trial.

the original condition of the evidence, the jury will be deprived of key evidence necessary for the resolution of this issue and will be unable to determine, on its own, whether the wrinkle was visible through the opening.

Plaintiffs claim that cutting the top of the fuel bladder will permit the jury "to observe residue patterns, the full length and permanent set of the visible wrinkles, any additional wrinkles, other abnormalities in the tank, visual signs of puddling effect due to the wrinkle damning water and fuel contaminants, all of which are physical signs of the long-term existence of a wrinkle." See Plaintiffs' Memorandum of Law, p. 5. This is clearly an attempt to bolster Plaintiffs' experts' already formed opinions. This destruction will not help the jury with the key question in this case – whether Defendants could see a wrinkle through the fuel filler cap at the March 22, 2000 inspection. In fact, Plaintiffs' suggested acts will destroy the jury's sole opportunity to view the wing as the Defendants did during the inspection in question. Further, defense counsel has been advised by Defendants' expert Doug Stimpson that it would be impossible to distinguish between a wrinkle that existed immediately prior to the crash and one that developed during the crash, during the three and a half years as the wreckage was stored outside in Atlanta, Georgia, or during the wreckage's recent move to Clayton, Delaware.

In Home Ins. Co. v. Cleveland Elec. Illuminating Co., 7 Fed.R.Serv.2d 731 (N.D. Ohio 1959), the court based its refusal to allow the defendant to conduct destructive testing on a piece of evidence on the plaintiff's need to use the evidence in its original state as an exhibit. Specifically, the court stated that "[i]n this case the object sought to be tested is unique in that it will constitute an important exhibit in plaintiff's case. Since the case is due for trial very soon the switch could not be replaced in time if damage resulted. Even slight damage would reduce its value as an exhibit." Id.

7

Here, the accident wreckage is unique and a very important exhibit. If the Plaintiffs are allowed to alter the evidence to make exhibits, Defendants will be prejudiced by being precluded from displaying the evidence in its original state to demonstrate that the wrinkle was not visible through this opening. Plaintiffs' argument that Defendants will not be prejudiced because photographs of the wreckage are available must be rejected. A photograph will not give the jury the hands-on opportunity to view the fuel cap themselves and will not enable the jury to view the opening from every angle and perspective.

Courts examining this issue have held that there is simply no substitute for the jury's own observance of this evidence. In American Family Ins. Co. v. Village Pontiac-GMC, Inc., 585 N.E.2d 1115 (Ill. App. Ct. 1992), the court rejected an argument that photographs could substitute for a destroyed vehicle and noted that "[t]he physical object itself in the precise condition immediately after an accident may be far more instructive and persuasive to a jury than oral or photograph descriptions." Id. at 1119 (*citing* Nally v. Volkswagen of Am., Inc., 539 N.E.2d 1017, 1021 (Mass. 1989)).

Here, the photographs simply will not substitute for a view of the fuel tank.. The photographs do not adequately depict the fuel tank and do not represent all angles at which the inspectors may have looked through the cap.[3] For most of the photographs, a flashlight was placed inside the tank in order for the wrinkle to be shown. When Piedmont Hawthorne inspected the aircraft, however, a flashlight was not placed inside the tank. Therefore, the only way to have the jury to determine whether Piedmont Hawthorne could have seen the wrinkle, if it existed, during the annual inspection is to have the jury look through the fuel cap themselves.

---

[3]    See Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263 (8th Cir. 1993) (court rejected argument that photographs were proper substitute for destroyed vehicle where photos were not comprehensive, were grainy and blurred, failed to properly document crucial areas, and did not permit an estimation of measurements).

Furthermore, in their Memorandum of Law, Plaintiffs state that "the method of disassembly and inspection **should** allow for the fuel bladder (with wrinkle intact) and the fuel bay to be reassembled and inserted back into the wing, which **should** still permit viewing of the wrinkle through the fuel cap at trial." See Plaintiffs' Memorandum of Law, p. 5 (emphasis added). Plaintiffs themselves cannot ensure that cutting the top of the fuel bladder and removing the fuel bladder from the fuel bay will not alter the evidence. Defense counsel has been advised by Defendants' expert that this is not simply a matter of sliding the fuel bladder in and out of the bay. It is just as likely, and probably more so, that Plaintiffs' disassembly will forever alter or destroy the fuel bladder.

D. **In the Event Plaintiffs' Motion is Granted, Defendants' Expert Must be Present at the Destruction/Alteration of the Accident Wreckage**

In the event the Court grants Plaintiffs' motion, Defendants' expert must be present when the evidence is cut and disassembled. The overwhelming majority of courts, who have allowed destructive testing on evidence, including the courts in the cases cited by Plaintiffs, have given the opposing party the opportunity to attend and/or participate in the testing. See Ostrander, 119 F.R.D. at 420 ("[a]ll destructive testing shall occur at locations to be determined by defendant, and at times mutually convenient to counsel and experts of all parties…Plaintiffs' counsel and plaintiffs' expert may be present for all destructive testing which is the subject of this order…"); Cameron, 565 P.2d at 931 (requiring notice to the opposing party of the time, place and manner of the testing and opportunity for opposing party and its experts to attend the testing); Sarver v. Barrett Ace Hardware, Inc., 349 N.E.2d 28, 31 (Ill. 1976) (requiring notice and opportunity to be present during testing); Petruk v. S. Ferry Realty Co., 157 N.Y.S.2d 249, 254 (N.Y. App. Div. 1956) (requiring notice and opportunity to attend); Foster Lipkins Corp. v. Suburban Propane Gas Corp., 339 N.Y.S.2d 581, 583 (N.Y. Spec. Term 1973) (requiring 20 days notice and opportunity to attend).

9

Therefore, if the Court permits Plaintiffs to alter the accident wreckage, Defendants' expert should be permitted to be present during the cutting and disassembling and conduct any necessary testing as a result of the alteration of the evidence.

### III.  CONCLUSION

For all the reasons set forth above, Defendants respectfully request that this Honorable Court deny Plaintiffs' Motion to Permit Creation of Trial Exhibits from Accident Wreckage.

                    Respectfully submitted,

                    COZEN O'CONNOR


BY: _____
      Ann Thornton Field, Esquire
      Identification No. 52130
      Sara Anderson Frey, Esquire
      Identification No. 82835
      1900 Market Street
      Philadelphia, PA 19103
      (215) 665-2000
      Attorneys for Defendants

Date: November 4, 2003

## CERTIFICATE OF SERVICE

I, Sara Anderson Frey, Esquire, attorney for Defendant, do hereby certify that a copy of the foregoing Response to Plaintiffs' Motion to Permit Creation of Trial Exhibits from Accident Wreckage has been served upon counsel by facsimile and United States Mail, postage prepaid this 4th day of November, 2003, as follows:

Richard Genter, Esquire
Wolk & Genter
1710-12 Locust Street
Philadelphia, PA  19103


_____
Sara Anderson Frey, Esquire