IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT H. KOONS, JR. and SALLY KOONS, his wife, : | CIVIL ACTION |
| : | |
| Plaintiffs, : | |
| v. : | |
| : | JURY TRIAL DEMANDED |
| PIEDMONT HAWTHORNE AVIATION, HAWTHORNE : | |
| A-B-E, INC., n/k/a HAWTHORNE AIRPORT : | |
| SERVICES, INC., and PIEDMONT HAWTHORNE : | No. 02CV2739 |
| HOLDINGS, INC., : | |
| : | |
| Defendants. : | |

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF PLAINTIFFS' MOTION TO PERMIT CREATION
OF TRIAL EXHIBITS FROM ACCIDENT WRECKAGE**

Defendant Piedmont's response memorandum misstates plaintiffs' reasons for requesting leave to create trial exhibits from the accident wreckage. Piedmont provides conclusory and unsupported arguments pertaining to potential prejudice. In addition, Piedmont relies on inapposite case law relating to expert rebuttal reports. Because the creating of the proposed trial exhibits will eliminate a *battle of the experts* at trial and will assist the jury in ascertaining the truth, plaintiffs request this Court to grant plaintiffs' motion to create trial exhibits from the accident wreckage.

    A.    **Plaintiffs' Proposed Demonstrative Evidence will Aid the Jury and Is Properly Before the Court**

Defendant Piedmont attempts to cast plaintiffs' motion as an attempt to conduct additional discovery past the discovery deadline. (Defendants' Response at 2). However, defendant Piedmont's interpretation of plaintiffs' motion is incorrect. Plaintiffs brought the motion to create trial exhibits to provide the jury with tangible physical evidence that the wrinkle

existed prior to the crash and could not have occurred during the crash as Mr. Stimpson opines. Specifically, plaintiffs' motion explains that the trial exhibits created from the wreckage would demonstrate wear marks, abnormalities from puddling of fuel contaminates, and other physical signs of a long existing wrinkle. These exhibits are important to rebut defendants' theory that the wrinkle was caused by the crash, which was introduced for the first time in Mr. Stimpson's expert report.

Without the proposed exhibits, the jury will be subject to nothing but a battle of the experts, which is exactly what defendant Piedmont seeks because Piedmont intends to argue that Plaintiffs have no evidence to prove that the wrinkle existed prior to the crash. Defendant Piedmont's motive for opposing plaintiffs' motion has little to due with potential prejudice and everything to do with preventing Plaintiffs' from offering evidence at trial. Defendant Piedmont's motive becomes apparent after reading Piedmont's pre-trial statement wherein Piedmont states "plaintiffs, however, have no evidence that the wrinkle was present at the March 22, 2000 inspection." (Defendants' Pre-Trial at 3). Therefore, to deny plaintiffs' motion based on defendants' alleged prejudice will sanction defendants' trial strategy of arguing prejudice regarding the creation of the demonstrative evidence and during trial arguing to the jury that Plaintiffs could not meet their burden because no evidence or exhibits exist demonstrating that the wrinkle existed prior to crash.

Moreover, defendant Piedmont's argument that plaintiffs' motion is untimely contradicts the sequence of events leading to this motion. First, plaintiffs' motion is not an attempt to conduct additional discovery. Plaintiffs' theory that the wrinkle in the fuel cell bladder caused this crash has not changed. Second, plaintiffs were not aware that defendant Piedmont intended to argue that the wrinkle occurred during the accident until Mr. Stimpson issued his report on

September 5, 2003. Third, defendants' expert, Mr. Stimpson, did not even examine the accident aircraft until August 19, 2003; therefore, requesting to create the proposed trial exhibits would have been premature because defendants' expert would not have been able to examine the aircraft in its original state.

Defendant attempts to support its claim of untimeliness by relying on <u>Hawthorne v. Michelin Tire Corp.</u>, 100 F.3d 962 (9th. Cir. 1996) (Unpublished Disposition), however, the <u>Hawthorne</u> opinion can be factually distinguished from this case and the holding is not as restrictive as defendants portray. First, <u>Hawthorne</u> differs from the instant case because the plaintiffs reached their opinions two years before requesting destructive testing. Here, plaintiffs request to create trial exhibits approximately one month after being notified that defendants intend to argue that the crash caused this accident. In <u>Hawthorne</u>, the plaintiffs stated that the testing would only be used to strengthen their theory. Here plaintiffs request to create demonstrative evidence to prove to the jury that the wrinkle did not occur during the crash as the defendant Piedmont alleges. Moreover, the district court in <u>Hawthorne</u> did not deny outright plaintiffs ability to conduct destructive testing; rather, the district court identified the use of an X-Ray as a nondestructive method of conducting testing on the tire. The district court then stated, if the X-Ray indicated a tire belt separation, the court would reevaluate the motion to conduct destructive testing.

In the instant case, Plaintiffs and their experts are not aware of any manner other than that proposed by plaintiffs' motion to examine the inner portion and underside of the fuel bladder. If the court determines that the plaintiffs' motion will be prejudicial to defendant Piedmont, plaintiffs request at a minimum to be able to cut observation windows in certain selected portions of the left wing. These windows will permit plaintiffs to show the jury that no damage from the

crash exists in the fuel cell area. In addition, the windows will allow plaintiffs to examine the upper condition of the fuel bladder and its retainer snaps, which directly impact plaintiffs' ability to rebut defendants' theory that the aircraft ran out of fuel.

### B. **Defendant Piedmont Provides Conclusory Arguments of Prejudice**

Defendant Piedmont's response memorandum provides conclusory statements regarding the prejudice defendant Piedmont may experience by creating the trial exhibits proposed by plaintiffs. Specifically, defendant Piedmont argues that plaintiffs "disassembly will forever alter or destroy the fuel bladder." (Defendants' Memo at 9). To support its conclusion, Piedmont counsel states that they "have been advised by Defendants' expert that this is not simply a matter of sliding the fuel bladder in and out of the bay." (Defendants' Memo at 9). The problem with defendant Piedmont's claim of prejudice is that Piedmont offers no affidavit of its expert explaining the prejudicial impact that plaintiffs' motion will have. Instead, defendant simply makes unsupported arguments in response to plaintiffs' motion. Plaintiffs, however, offered the affidavit of Mr. Jerry Wells who stated that the method of disassembly and inspection should allow for reassembling. (See Exh. "J" to Pltfs' Memo of Law to Permit Creation of Trial Exhs.). As a matter of fact, plaintiffs proposed method of removing the fuel bay and bladder from the wing is the reverse procedure utilized by Cessna Aircraft Company during original installation of the fuel bladder and bay. Therefore, plaintiffs' motion to create trial exhibits should be granted because defendant Piedmont did not offer expert testimony or any supporting evidence that the proposed creation of trial exhibits will be prejudicial.

### C. **Piedmont's Opposition to Creating Evidence to Rebut Its Theories Is Inapposite**

Defendant Piedmont's response memorandum argues that demonstrative evidence from the wreckage cannot go beyond the plaintiffs' case-in-chief and the evidence can only be used to

rebut new matter or new theories presented by the defendants' case-in-chief. (Defendants' Memo at 5). The problem with defendant Piedmont's argument is that the trial has not begun; and neither plaintiffs nor defendants have presented their case-in-chief; therefore, plaintiffs are not requesting to create evidence to rebut defendants' trial testimony. The case law cited by defendant Piedmont only involves examples of plaintiffs requesting to offer rebuttal testimony after plaintiff has offered its case-in-chief. See e.g., Upshur v. Shepherd, 538 F.Supp. 1176 (E.D. Pa. 1982) (requested rebuttal expert testimony after defendant's expert testified at trial); Bowman v. General Motors Corp., 427 F.Supp. 234 (E.D. Pa. 1977) (plaintiff offered rebuttal testimony after the defendant's expert testified at trial, which the court permitted on a limited basis); Emerick v. U.S. Suzuki Motor Corp., 750 F.2d 19 (3rd. Cir. 1984) (plaintiff conducted testing during case-in-chief and attempted to introduce testimony regarding such tests during case-in-chief and rebuttal; however, the court denied plaintiffs requests); Step Saver Data System, Inc. v. Wyse Technology, 752 F. Supp. 181 (E.D. Pa. 1990) (Third Circuit prohibited plaintiff from offering a rebuttal witness that already testified during plaintiffs' case-in-chief because the testimony was in substance the same as presented during the plaintiffs' case in chief); Harrell v. Fiberboard Corp., 1989 WL 145810 (E.D. Pa. 1989) (plaintiffs requested opportunity to offer rebuttal testimony concerning evidence that plaintiffs were aware of before their case-in chief).

Because defendant Piedmont's argument pertains to rebuttal testimony at trial, plaintiffs assert that Piedmont's argument pertaining to plaintiffs' ability before trial to create exhibits from the wreckage that rebut Mr. Stimpson's opinions is inapposite. Therefore, plaintiffs request the court to permit plaintiffs to create trail exhibits for use at trial during plaintiffs' case-in-chief.

**D.**     **Defendant Piedmont's Attendance While Creating the Exhibits**

Plaintiffs have no objection to defendant Piedmont's counsel and/or expert witnesses being present during the creation of the trial exhibits from the accident wreckage.

Respectfully submitted,

WOLK & GENTER

BY: _____
Richard E. Genter, Esquire
Attorney I.D.: 30419
Christopher J. Cerski, Esquire
Attorney I.D.: 89611
1710-12 Locust Street
Philadelphia, PA  19103
(215) 545-4220
Attorneys for Plaintiffs