IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT H. KOONS, JR. and SALLY KOONS, his wife, | : <br> : CIVIL ACTION <br> : |
| Plaintiffs, | : |
| v. | : |
|  | : JURY TRIAL DEMANDED |
| PIEDMONT HAWTHORNE AVIATION, HAWTHORNE A-B-E, INC., n/k/a HAWTHORNE AIRPORT SERVICES, INC., and PIEDMONT HAWTHORNE HOLDINGS, INC. | : <br> : <br> : <br> : <br> : No. 02CV2739 |
|  | : |
| Defendants. | : |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION IN LIMINE TO PRECLUDE DENNIS HANDLEY'S
TESTIMONY AND REPORT**

Plaintiffs, Robert H. Koons, Jr. and Sally Koons, by and through their undersigned counsel, hereby submit this Memorandum in Opposition to Defendants' Motion In Limine to Preclude Dennis Handley.

**I.  INTRODUCTION**

Defendant, Piedmont, moves this Court for an order to preclude the report and testimony of the plaintiffs' expert Dennis Handley. Defendant argues that Mr. Handley's opinions do not constitute rebuttal opinions and were untimely. Defendant Piedmont's motion should be denied because plaintiffs properly disclosed Mr. Handley's report and his opinions rebut Mr. Stimpson's conclusions and findings.

II.   **BACKGROUND**

This lawsuit arises out of an airplane accident which occurred on May 9, 2000 when the single engine Cessna 210 aircraft, piloted by plaintiff Robert Koons, crashed in Fayetteville, North Carolina.  On May 2, 2003, plaintiffs timely disclosed their liability reports to the defendant in accordance with this Court's Second Scheduling Order entered on March 6, 2003 attached as Exhibit "A".

As a courtesy to defense counsel, and in order to accommodate the schedule of defense expert, plaintiffs' counsel agreed to give the defendant additional time to have its experts examine the wreckage.  This additional time needed by the defendant resulted in the entry of the Court's Third Scheduling Order on July 9, 2003, which permitted plaintiffs the ability to file rebuttal reports thirty days after the defense submitted its expert reports.  (See Order attached as Exhibit "B").  Piedmont's inspection and examination of the wreckage did not take place until August 19, 2003.  (See letter dated August 14, 2003 attached as Exhibit "C").  On September 5, 2003, Piedmont produced the liability expert report of Mr. Douglas Stimpson.  (See letter dated September 5, 2003 attached as Exhibit "D").  Based upon the flaws in Mr. Stimpson's analysis, plaintiffs deemed it necessary to file rebuttal reports addressing the opinions of Mr. Stimpson.  In order to have the wreckage more readily available for trial, plaintiffs had the wreckage moved from Atlanta, Georgia to a storage facility in Clayton, Delaware.  After its arrival in Delaware, another inspection of the aircraft was conduced on September 30, 2003 so as to allow plaintiffs' experts an opportunity to

evaluate Mr. Stimpsons' findings and offer rebuttal opinions. By an agreed extension among counsel, plaintiffs provided their rebuttal reports to defendant on October 10, 2003. (See, letter dated October 10, 2003 attached as Exhibit "E").

### III. ARGUMENT

The Federal Rules of Civil Procedure anticipate a plaintiff filing expert rebuttal reports. See F.R.C.P. 26. Specifically, the Federal Rules provide that, "if the evidence is introduced to contradict or rebut evidence on the same subject matter identified by another party. . . [it must be disclosed] within thirty days after the disclosure made by another party." F.R.C.P. 26(c). Similar to this Rule, this Court issued a scheduling order anticipating the plaintiffs' need to file expert reports and providing for such disclosures thirty (30) days after defendant disclosed its liability reports. (See, Court's Third Amended Order attached as Exhibit "B"). Because Mr. Handley's report and testimony rebut Mr. Stimpson's findings and opinions, and these opinions were timely disclosed, defendant's Motion to Exclude Mr. Handley's Testimony and Report should be denied.

#### 1. Mr. Handley's Opinions Were Disclosed in a Timely Manner.

Defendant Piedmont argues that plaintiffs did not timely disclose Mr. Handley as an expert witness because plaintiffs failed, "to disclosure Mr. Handley's identity until October 10, 2003." See Defendant's Motion in Limine at Page 6. Defendant Piedmont ignores the fact that disclosure of Mr. Handley as a rebuttal expert was contingent upon Piedmont's disclosure of Mr. Stimpson's opinions. Here, any time lapse between

plaintiffs' original expert disclosure and rebuttal disclosure results from delay of Piedmont.

Specifically, plaintiffs' expert rebuttal reports were disclosed in October of 2003 because of Piedmont's request for more time to inspect the wreckage and disclose its liability report. At the request of defense counsel, plaintiffs' counsel agreed to give the defendant additional time to have its expert examine the wreckage. (See, Exhibit "C"). The additional time needed by Piedmont resulted in the entry of this Court's Third Scheduling Order on July 9, 2003, which provided plaintiff's the ability to file rebuttal reports thirty days after defendant submitted its expert reports. Piedmont's inspection and examination of the wreckage did not take place until August 19, 2003. (See, Exhibit "C"). On September 5, 2003, Piedmont produced the liability expert report of Mr. Douglas E. Stimpson. After receiving the report, plaintiffs found it necessary to conduct a final examination of the wreckage. This examination took place on September 30, 2003.[1] Based upon the flaws in Mr. Stimpson's analysis, which became obvious after the September 30, 2003 inspection, plaintiffs deemed it necessary to file rebuttal reports addressing the opinions of Mr. Stimpson.

By agreement of counsel, plaintiffs submitted rebuttal reports, including Mr. Handley's on October 10, 2003. (See, Exhibit "E". Consequently, these reports were properly disclosed within the agreed time for rebuttal reports.

---

[1] In order to have the wreckage more readily available, plaintiffs had the wreckage moved form Atlanta, Georgia to Clayton, Delaware.

Therefore, because the Scheduling Order contemplated rebuttal reports, and Mr. Handley's report/testimony specifically rebuts Mr. Stimpson's opinions, Mr. Handley's report should not be excluded.

   2.   **Mr. Handley's Opinion Constitutes a Rebuttal Report**.

Defendant Piedmont also argues that Mr. Handley's report constitutes new expert opinion and does not rebut the opinions and findings of Mr. Stimpson. Mr. Handley's report, however, is a true rebuttal report. Specifically, Mr. Handley identifies the opinions of Mr. Stimpson's report that he is rebutting and then offers an opinion and analysis of why Mr. Stimpson is incorrect. (See, Report of Dennis Handley attached as Exhibit "F"). For example, Mr. Stimpson opined that disassembly of the adaptor to view potential wrinkles "is not required or 'called out' in the Cessna 100 hour/annual inspection checklist, 14 C.F.R. Part 43 appendix D, or any Cessna Service Bulletin, or FAA Airworthiness Directive applicable to the aircraft." (See, Report of Douglas Stimpson's Report at pg. 2 attached as Exhibit "G"). Mr. Handley utilized his knowledge as an IA mechanic to rebut Mr. Stimpson's report by opining that:

> "I disagree with this statement for two reasons. First, the Cessna Maintenance Manual inspection procedures call for a detailed inspection, internal/external, of the fuel bladder to be completed at each engine overhaul or 1000 hours of operation. To accomplish this inspection, you must defuel the left tank and then remove the filler adapter plate. As noted above, the return to service sign-off indicates that the aircraft was inspected pursuant to the Cessna Maintenance Manual Inspection Procedure. Although Piedmont Hawthorne witnesses deny this, the fact remains that this is what the logbook says and those inspection procedures, if followed, would have discovered the wrinkles. Secondly, AD 78-05-06 requires one to properly identify the type and

5

> manufacture date of the fuel bladder to determine if action needs to be taken. The aircraft records show in August, 1965, "Replaced left main fuel cell this date". No part number or model number was given. A review of the logbooks show no other work has been completed on the left fuel cell. To properly identify the type and manufacture date of the fuel bladder, the bladder would need to be defueled, then the fuel filler adapter plate removed so the information could be read from the top side of the bladder. Thus, had this been done, the wrinkle would have been seen since even Mr. Stimpson admits that with the adapter plate removed, the wrinkle is clearly visible.

(See, Report of Dennis Handley at p. 14).

Second, Mr. Stimpson noted that the inspection of the fuel tank by Piedmont was only completed by using a flashlight. (See, Stimpson Report p. 2 attached as Exhibit "G"). Mr. Stimpson later opined that Piedmont had "no ongoing duty, or obligation to inspect the tanks in greater detail than was done during the inspection." (Report of Stimpson at p. 5). Mr. Handley's rebuttal report provides the documentation and references to discredit Mr. Stimpson's opinions. Specifically, Mr. Handley identified several reasons pursuant to the Federal Aviation Regulations and manufacturers requirements to inspect the fuel tank in greater detail. (See e.g. Report of Dennis Handley at p. 8, 9, 10). Mr. Handley highlighted that "the simple use of an inspection mirror, something all mechanics know how to use, would have discovered the wrinkle." (See, Handley report at p. 13) Mr. Handley further identifies Advisory Circular 43.13-1B in that it provides acceptable methods, techniques, and practices for aircraft inspection and repair, which specifically identifies an inspection mirror "is to be used to view an area that is not in the normal line of sight. The mirror should be of the

6

appropriate size to easily view the components with the reflecting surface free of dirt, cracks, worn coating, etc., and a swivel joint tilt enough to maintain."  (See, Report of Dennis Handley at 8.)

Third, Mr. Stimpson concluded, that AD 84-10-O1R was previously complied with and was not a reoccurring Airworthiness Directive.  Mr. Handley's opines that the AD is applicable to the aircraft even after the AD has been originally complied with. (See Report of Dennis Handley at p. 15.)

Therefore, because Mr. Handley's report specifically identifies Mr. Stimpson's findings and opinions for which Mr. Handley's report rebuts, plaintiffs' use of Mr. Handley as a rebuttal expert witness is proper and defendant Piedmont's motion to preclude Mr. Handley's testimony should be denied.

### 3.     Mr. Handley's Testimony/Report Is Not Cumulative

Defendant Piedmont next attempts to persuade the Court to exclude Mr. Handley's report/testimony by classifying it as cumulative.  Mr. Handley's report, however, relies on his specialized knowledge as an IA to rebut Mr. Stimpson's opinions. This certification provides Mr. Handley the expertise to discuss the errors in Mr. Stimpson's analysis as they relate to Piedmont's maintenance operation and compliance with federal and manufacturer requirements.  No other of plaintiffs' experts maintain such certification, nor will Mr. Fiedler or Mr. Wells offer the testimony which Mr. Handley will.  For example, Mr. Fiedler is an aircraft reconstructionist and will testify regarding flight times, fuel consumption, piloting inspection procedures, as well as piloting and operating issues. (See Reports of A.J. Fiedler attached as Exhibit "H").  Mr.

Wells is an expert in Cessna fuel tanks, and specifically Cessna fuel bladder wrinkles. Mr. Wells will be the principle expert to demonstrate, through exhibits and his expertise, the probative nature of a wrinkle in the fuel cell bladder. These experts will not repeatedly address Piedmont's compliance with federal regulations. These experts will not rebut Mr. Stimpson's report, as it relates to Piedmont's responsibilities, duties, allegations and requirements as a FAA Certified Repair Station. Therefore, Mr. Handley's testimony is unique and will assist the jury in its deliberations. Accordingly, Piedmont's motion should be denied.

IV.     **CONCLUSION**

Mr. Handley was properly identified as a rebuttal expert. Plaintiffs disclosed Mr. Handley in a timely fashion after Piedmont disclosed the expert report of Mr. Stimpson. Mr. Handley's report does not offer new theories, but rather rebuts the findings and conclusions of Mr. Stimpson. Mr. Handley's report is not cumulative of the other experts because of his specialized knowledge as an IA mechanic and experienced as a FAA certified repair station. Therefore, plaintiffs respectfully request that this

Honorable Court deny Piedmont's motion to preclude the expert testimony of Dennis Handley.

                                        Respectfully submitted,

                                        WOLK & GENTER

BY:      _____
          Arthur Alan Wolk, Esquire
          Richard E. Genter, Esquire
          Christopher J. Cerski, Esquire
          1710-12 Locust Street
          Philadelphia, PA  19103
          (215) 545-4220
          Attorneys for Plaintiffs