IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT H. KOONS, JR. and<br>SALLY KOONS, his wife, | :<br>: CIVIL ACTION<br>: |
| Plaintiffs, | : |
| v. | :<br>: JURY TRIAL DEMANDED |
| PIEDMONT HAWTHORNE AVIATION,<br>HAWTHORNE A-B-E, INC., n/k/a<br>HAWTHORNE AIRPORT SERVICES, INC.,<br>and PIEDMONT HAWTHORNE<br>HOLDINGS, INC. | :<br>:<br>:<br>:<br>:<br>: No. 02CV2739 |
| Defendants. | :<br>: |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR MOTION FOR RELIEF OF JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 60(B)**

Plaintiffs, Robert H. Koons, Jr. and Sally Koons, by and through their undersigned counsel, hereby submit this Memorandum in Support of Their Motion for Relief of Judgment Pursuant to Federal Rule of Civil Procedure 60(b).

**I.   INTRODUCTION**

This lawsuit arose out of an airplane accident which occurred on May 9, 2000 when the single engine Cessna 210 aircraft piloted by plaintiff, Robert Koons crashed in Fayetteville, North Carolina.

On the day of the accident, Mr. Koons departed from Columbia County Airport, Hudson, New York with a final destination of Gilbert Airport near Winter Haven, Florida. A fuel stop was planned for Fayetteville Regional Airport, North Carolina. On final approach to the Fayetteville Airport, the aircraft's engine lost power and quit causing an off-airport crash landing. Post crash investigation disclosed a large pre-existing wrinkle in the left fuel cell

bladder found to measure approximately 11/16 inches in height, which caused solid and water fuel contamination.

Plaintiffs brought suit against defendant Piedmont for failing to identify and fix the wrinkle during the aircraft's annual inspection approximately seven weeks prior to the accident. Defendant Piedmont argued, *inter alia*, that the crash occurred due to fuel starvation caused by Mr. Koons' flight exceeding the time fuel ratio. Piedmont supported its defense by offering the expert testimony of Mr. Douglas Stimpson. Mr. Stimpson testified that Mr. Koons' flight took between 3.5 to 4 hours to reach Fayetteville. Mr. Stimpson's opinions were based upon winds aloft information provided by Compu-Weather. (Exhibit "A"). Mr. Stimpson supported his opinions and relied on Compu-Weather's data by testifying on cross examination that the Compu-Weather data he used in his calculations were adjusted for magnetic variation.

At the conclusion of trial, the jury rendered a verdict and found defendant Piedmont not negligent. Plaintiffs filed post-trial motions pursuant to Federal Rules of Civil Procedure 50 and 59. Your Honor denied plaintiffs' post-trial motions on February 3, 2004. Since filing post-trial motions, plaintiffs retained a weather expert to review the actual and adjusted winds for the day of the accident. Based upon her declaration, plaintiffs file this Rule 60 motion because new facts establish that Mr. Stimpson perjured himself by testifying that the wind calculations he relied upon were adjusted for magnetic variation. Because the flight time was a key issue in this case, plaintiffs request this Court to grant plaintiffs relief from the judgment and order a new trial.

## II.     STANDARD OF REVIEW

The Federal Rules of Civil Procedure authorize this court to grant relief from the judgment entered on December 19, 2003 due to the perjured trial testimony of Douglas Stimpson. Specifically, "on motion and upon such terms as are just, the court may relieve a

party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b) . . . or (6) any other reason justifying relief from the operation of the judgment." Fed. R. Civ. P. 60(b).

### III. ARGUMENT

Justice mandates ordering a new trial because defendant Piedmont's expert, Douglas Stimpson, perjured himself during trial on a key issue in this case and that testimony led the jury to its verdict. A key witness's perjury or deliberately false testimony on a material matter provides sufficient grounds for a new trial when the testimony results in the denial of a fair trial. *See, e.g.,* Phillips v. Crown Central Petroleum Corp., 556 F.2d 702, 705 (4th Cir.1977) (trial court abused discretion by failing to consider witness's admittedly false testimony when deciding whether to grant new trial); Stamps v. United States, 406 F.2d 925, 928-29 (9th Cir.1969) (trial court erred by failing to grant new trial on charges supported by testimony of witnesses as to whom there was a "serious question" of perjury); 12 Moore's Federal Practice § 59.13[2][c][iii] (3d ed.2000) ("false testimony or perjury by a witness may be grounds for a new trial if the falsity of the testimony is established"). *See also* Viskase Corp. v. American National Can Co., 261 F.3d 1316, 1324 (Fed.Cir.2001), in which the Federal Circuit affirmed in relevant part a new trial order where a party's expert lied about his presence during testing of defendant's products. Although the plaintiff who called him was not aware of the perjury, his false testimony "irretrievably tainted" the verdict. Viskase Corp. v. American National Can Co., 979 F.Supp. 697, 705 (N.D.Ill.1997), *aff'd in relevant part,* 261 F.3d at 1324.

The Eastern District of Pennsylvania has evaluated the necessity of a new trial due to perjured testimony by examining whether "(1) the testimony given by a material witness was

3

false; (2) the jury might have reached a different conclusion; and (3) the party seeking a new trial was surprised by the false testimony and unable to meet it, or did not know of its falsity until after trial." *See, e.g.*, U.S. v. Bales, 1997 WL 825245 (E.D. Pa. 1997); U.S. v. Enigwe, 1992 WL 382325 (E.D. Pa. 1992).

### A.    Mr. Stimpson's Winds Aloft Testimony Was False

New facts demonstrate that Mr. Stimpson provided false testimony to the jury regarding the winds aloft on the day of the accident. Mr. Stimpson testified during trial that Mr. Koons' flight would haven taken 3.5 to 4 hours to complete. His opinion was based on wind data provided by Compu-Weather, a weather consulting firm. Mr. Stimpson explained to the jury that an examination of the winds was needed to determine Mr. Koons' flight time to Fayetteville, North Carolina. Mr. Stimpson then calculated possible flight times based on the wind data provided by Compu-Weather. Upon cross examination, plaintiffs' counsel asked Mr. Stimpson whether the wind information he relied upon was adjusted for magnetic variation. An adjustment for magnetic variation is an important factor in calculating flight times because the adjustment will, in this instance, reduce the flight time. Mr. Stimpson testified that winds information from Compu-Weather had been adjusted and his flight time calculations were accurate.

Since the trial, plaintiffs have learned new facts establishing that Mr. Stimpson's testimony was false. The winds data he relied upon was not adjusted for magnetic variation, which, therefore, provided false flight times for the jury's consideration. Specifically, the winds on the day of the accident were:

4

(True Winds at 9,000 feet)

| Location | Wind Speed (knots) | Wind Direction (true degrees) |
|---|---|---|
| Albany, NY (KALB) | 26 | 255 |
| Brookhaven, NY (KOKX) | 28 | 255 |
| Washington DC (KIAD) | 15 | 255 |
| Greensboro, NC (KGSO) | 13 | 260 |

(Adjusted Winds at 9,000)

| Location | Wind Speed (knots) | Adjusted Wind Direction (degrees) | Magnetic Declination (degrees) |
|---|---|---|---|
| Albany, NY (KALB) | 26 | 268 | 13°W |
| Brookhaven, NY (KOKX) | 28 | 269 | 14°W |
| Washington DC (KIAD) | 15 | 265 | 10°W |
| Greensboro, NC (KGSO) | 13 | 266 | 6°W |

*(See* Exhibit "B", Declaration of Dr. Elizabeth Carter and the report attached thereto).

Mr. Stimpson's false testimony becomes apparent when a comparison is conducted between the true and adjusted winds above versus the winds data Mr. Stimpson relied on. For example, Mr. Stimpson based his four-hour flight time estimation on the 250 degree winds reported by Compu-Weather, which Mr. Stimpson testified were adjusted for magnetic variation. This testimony cannot be further from the truth. As indicated above, the true (pre-adjusted) winds for Mr. Koons' flight path never fell below 255 degrees. As a matter of fact, the actual adjusted winds ranged from 265-268 degrees. Consequently, Compu-Weather's report of winds at approximately 250 degrees could not have been adjusted, but rather were reported in true degrees.

Because the comparison of winds data speaks for itself, Mr. Stimpson's testimony that Compu-Weather adjusted the winds data is false and Mr. Stimpson perjured himself by testifying the data had been adjusted. Mr. Stimpson compounded his perjury by relying on the non-

5

adjusted data to provide the jury with an incorrect flight time, which directly affects whether Mr. Koons had ample fuel on board to complete his trip to Fayetteville, North Carolina. Therefore, to ensure justice a new trial should be granted.

### B. The Jury Might Have Reached A Different Conclusion

Plaintiffs filed suit against Piedmont because Piedmont failed to identify and eliminate a fuel-bladder wrinkle, which trapped containments in the fuel causing fuel starvation. As stated above, Piedmont's defense included, *inter alia*, that Mr. Koons' flight time and fuel consumption exceeded the maximum amount of fuel carried on Mr. Koons' Cessna airplane.

Mr. Koons testified at trial that his flight to Fayetteville took three hours, which was well within the fuel capacity of his aircraft. Piedmont used the testimony of Mr. Stimpson to provide the jury with flight time calculations, which ranged from 3.5 to 4 hours, which Piedmont argued exceeded the fuel capacity. Mr. Stimpson calculated the flight time by relying on wind data obtained by Compu-Weather. Mr. Stimpson testified that the wind data had been adjusted for magnetic variation, which is an essential step in calculating flight time because non-adjusted winds provide a longer flight time.

As established above, Mr. Stimpson's testimony was false. The winds he relied upon were not adjusted for magnetic variation; therefore, the flight times provided to the jury by Mr. Stimpson were inaccurate. Had Mr. Stimpson testified truthfully, he would have explained to the jury that the winds were not adjusted and his flight time calculations would be impacted in favor of plaintiff by using adjusted winds. Instead the jury deliberated under the false assumption that Mr. Stimpson's flight time calculations were correct. Therefore, the jury relying on Mr. Stimpson's false testimony likely concluded that Piedmont was not negligent because Mr. Koons ran out of gas. If Mr. Stimpson told the truth, the jury would have no other option than to

6

believe that Mr. Koons' flight took three hours and he had ample gas on board to complete his flight. With truthful testimony, the jury would have arrived at a different verdict. Accordingly, Mr. Stimpson's false testimony warrants a new trial.

### C. Plaintiffs' Were Surprised By The False Testimony And Were Unable To Meet It And Could Not Confirm Its Falsity Until After Trial

Plaintiffs were surprised by Mr. Stimpson's false testimony in many ways. Mr. Stimpson never disclosed in his Rule 26 expert report that he would offer an opinion regarding Mr. Koons' flight time. (Exhibit "C"). Mr. Stimpson's expert report made no mention of winds data or a winds report provided by Compu-Weather. As a matter of fact, Mr. Stimpson did not even consider the winds information until sometime after November 25, 2003[1] and plaintiffs were not furnished a copy of the Compu-Weather Report until December 2, 2003.

Plaintiffs had no way of anticipating Mr. Stimpson's false testimony. The weather report relied on by Mr. Stimpson does not indicate that the data was adjusted for magnetic variation. Mr. Stimpson's calculations were not provided to plaintiff until the day before he testified. Had Mr. Stimpson properly disclosed his flight time opinions and identified the weather data he relied upon as adjusted, plaintiffs would have called a weather expert to meet Mr. Stimpson's assertions. Instead, Piedmont and Mr. Stimpson sprung the false testimony on Plaintiffs. It was not until after trial that plaintiffs were able to retain a weather expert to research the actual weather reporting and confirm that the data relied upon by Mr. Stimpson had not been adjusted for magnetic variation.

Because adjusting the winds data directly impacts Mr. Koons' flight time, it was essential for the jury to understand that Mr. Stimpson's testimony was false   If plaintiffs were not surprised by Mr. Stimpson's false testimony, plaintiffs would have introduced a rebuttal weather

---

[1] The Compu-Weather Report is dated November 25, 2003.

7

expert. Consequently, the jury's deliberations were irretrievably tainted and plaintiffs were denied a fair trial. Based upon the new facts, plaintiffs request a new trial pursuant to Rule 60 as a result of Mr. Stimpson's false testimony. Nor could plaintiffs, as defense counsel suggested, have deposed Mr. Stimpson on the subject. Since he never, nor could he ever have had Compu-Weather's report until after November 23, 2003 and the time for expert discovery was long over and since Mr. Stimpson's computations were done the day before he testified at trial, plaintiffs would not possibly know he would testify about the flight time.

**IV.** **CONCLUSION**

Mr. Stimpson testified during trial that the weather data he relied upon to calculate Mr. Koons' flight time was adjusted for magnetic variation. A comparison of the National Oceanic and Atmospheric Administration (NOAA) National Weather Service (NWS) balloon sounding data versus the data provided by Compu-Weather establishes that Mr. Stimpson's testimony was false and his flight time calculations inaccurate. Mr. Koons' flight time became a key issue because defendant Piedmont argued that Mr. Koons starved the engine of fuel by running his tanks dry.

Because the jury received false testimony from Mr. Stimpson, the jury likely concluded that Mr. Koons ran the tanks dry and Piedmont could not, therefore, be negligent. If the jury knew the truth, a different verdict is likely. Plaintiffs were surprised by the false testimony because Mr. Stimpson's opinions were not properly disclosed and the Compu-Weather Report does indicate an adjustment for magnetic variation. Consequently, plaintiffs could not establish that Mr. Stimpson lied until after retaining a weather expert to obtain the true and adjusted winds for the day of the accident.

Mr. Stimpson's false testimony tainted the jury process and denied plaintiffs a fair trial. Plaintiffs request this Court to provide plaintiffs relief from the judgment and order a new trial pursuant to Rule 60(b).

Respectfully submitted,

_____
THE WOLK LAW FIRM
Arthur Alan Wolk, Esq.
Christopher J. Cerski, Esq.
1710-12 Locust Street
Philadelphia, PA 19103
(215) 545-4220